<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT W. MORTON, | : | Civil No. 06-2711 (RBK) |
| Petitioner, | : | |
| v. | : | <u>OPINION</u> |
| MICHELLE RICCI, et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

    JEAN D. BARRETT, ESQ.
    Ruhnke & Barrett, Esqs.
    47 Park Street
    Montclair, New Jersey 07042
    Attorney for Petitioner

    LISA SARNOFF GOCHMAN, Deputy Attorney General
    ANNE MILGRAM, ATTORNEY GENERAL OF NEW JERSEY
    P.O. Box CN 086
    Trenton, New Jersey  08625
    Attorneys for Respondents

<u>KUGLER</u>, District Judge

    Robert W. Morton filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a conviction in the Superior Court of New Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed as unexhausted, procedurally defaulted and on the merits.  For the reasons expressed below, the Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on August 22, 1996, and an amended judgment entered on October 14, 2005, in the Superior Court of New Jersey, Law Division, Burlington County, after a jury convicted him of knowing and purposeful murder, robbery and related charges, that arose from the robbery and stabbing on February 23, 1993, of Michael Eck, a gas station attendant.  The Law Division initially sentenced Petitioner to death, and to an aggregate non-capital sentence of 40 years imprisonment, with 20 years of parole ineligibility.  See State v. Morton, 155 N.J. 383, 410 (1998).  Petitioner took a direct appeal to the New Jersey Supreme Court, which affirmed the conviction and sentence.  Id.  On August 2, 2000, the New Jersey Supreme Court affirmed the death sentence on proportionality review.  See State v. Morton, 165 N.J. 235 (2000).  On March 19, 2001, the United States Supreme Court denied certiorari.  See Morton v. New Jersey, 532 U.S. 931 (2001) (mem).

Petitioner filed his first petition for post-conviction relief in the Superior Court of New Jersey, Law Division, on July 1, 2001.  See State v. Morton, Ind. No. 93-09-0492-I opinion at p. 8 (N.J. Super., Law Div., June 28, 2005).  On June 28, 2005, the Law Division granted relief, setting aside the capital sentence on the ground that counsel was constitutionally ineffective at the penalty phase.  On October 14, 2005, the Law Division entered an amended judgment and resentenced Petitioner to life imprisonment with a 30-year period of parole ineligibility.  The government did not appeal.

Counsel for Petitioner filed the Petition which is now before the Court on June 15, 2006. The Petition presents two grounds:

> Ground One: DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE TRIAL COURT REFUSED HIS PRETRIAL REQUESTS FOR ACCESS TO THE ORIGINAL TAPES OF HIS ALLEGED STATEMENTS FOR TESTING AND REFUSED TO INSTRUCT THE JURY OF THIS LACK OF ACCESS, BUT PERMITTED THE PROSECUTOR TO ARGUE IN SUMMATION THAT THE DEFENSE COULD HAVE HAD THE TAPES TESTED.
>
> Ground Two: THE INTRODUCTION INTO EVIDENCE OF THE TAPE AND TRANSCRIPT OF THE VICTIM'S 9-1-1 CALL DENIED MR. MORTON DUE PROCESS AND A FAIR TRIAL.

(Pet. ¶ 12.a. - 12.b.)

The State filed an Answer seeking dismissal of the Petition as unexhausted, procedurally defaulted, and on the merits. Although given an opportunity to do so, Petitioner filed no reply.

## II. DISCUSSION

A. Exhaustion

This Court may not consider the merits of the grounds raised in the Petition under § 2254 without first addressing Respondents' arguments that those grounds are unexhausted or, if exhausted, procedurally barred. See House v. Bell, 547 U.S. 518 (2006); Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

A district court may not grant a writ of habeas corpus under § 2254 unless the petitioner has exhausted state court remedies or such process is unavailable or ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); Rhines v. Weber, 544 U.S. 269 (2005); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Section 2254(b) provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court **shall not be granted** unless it appears that -
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B) (emphasis added); see also Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998); Lambert, 134 F.3d at 513; Toulson v. Beyer, 987 F.2d 984, 987-89 (3d Cir. 1993). Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Federal courts have consistently adhered to the exhaustion doctrine "for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Picard v. Connor, 404 U.S. 270, 275 (1971) (citations and internal quotation marks omitted). The statutory scheme under the AEDPA "reinforces the importance of Lundy's 'simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court.'" Rhines, 544 U.S. at 276-77 (quoting Rose v. Lundy, 455 U.S. 509, 520 (1982)).

The Exhaustion Doctrine requires a petitioner to fairly present each federal claim to each level of the state court system. See Baldwin v. Reese, 541 U.S. 27 (2004); O'Sullivan v.

4

Boerckel, 526 U.S. 838 (1999); Rose v. Lundy, 455 U.S. 509, 515 (1982); United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17 (1925); Burkett v. Love, 89 F.3d 135, 138 (3d Cir. 1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court. O'Sullivan, 526 U.S. at 845; see also Baldwin, 541 U.S. at 29. Thus, the Supreme Court "held in Rose v. Lundy, 455 U.S. 509 . . . (1982), that federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." Rhines, 544 U.S. at 273. To satisfy the total exhaustion requirement, a petitioner in the custody of the State of New Jersey must present each federal claim to the Superior Court of New Jersey, Law and Appellate Divisions, and to the New Jersey Supreme Court. See Toulson, 987 F.2d at 987-89. The habeas petitioner carries the burden of proving total exhaustion. See Lambert, 134 F.3d at 513; Toulson, 987 F.2d at 987.

"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999); accord Baldwin v. Reese, 541 U.S. 27 (2004); Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam), and must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982) (citation and internal quotation marks omitted). The United States Court of Appeals for the Third Circuit instructs that a petitioner can fairly present his claim if his state court brief shows: "(a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations;

5

(c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Nara v. Frank, 488 F. 3d 187, 198 (3d Cir. 2007) [1]; see also McCandless, 172 F. 3d at 260. In making this determination, a court must examine the briefs filed by petitioner in the state courts. See Dye v. Hofbauer, 546 U.S. 1, 4 (2005) (petitioner fairly presented federal claim where "the text of the brief under this argument heading cites the Fifth and Fourteenth Amendments to the Constitution of the United States" and federal cases concerning due process violations, even though state appellate court opinion made no mention of a federal claim); Smith v. Digmon, 434 U.S. 332, 333 (1978) ("It is too obvious to merit extended discussion that whether the exhaustion requirement . . . has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court"); but see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (petitioner failed to exhaust federal nature of claim where a state court needed to look beyond "a petition or a brief (or a similar document)" to be aware of the federal nature of the claim); Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) ((habeas petitioner failed to "apprise the state court of his claim that the . . . ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment").

---

[1] In Nara, the Court of Appeals noted the Supreme Court's ruling in Baldwin v. Reese, 541 U.S. 27, 32 (2004), "that the petitioner's briefs to the state courts in that case did not 'fairly present' a federal claim because the briefs cited no case that might alert the state court to the federal nature of the claim, lacked a factual description supporting the claim, and yet cited federal law in support of other claims." Nara, 488 F. 3d at 198 n.17.

In this case, Respondents argue that Petitioner's claims are not exhausted because Petitioner failed to present the federal nature of the claims to the New Jersey courts. A review of Petitioner's state brief on direct appeal, however, shows that Point I expressly references the Fifth and Fourteenth Amendments of the United States Constitution. Specifically, Point I of Petitioner's state brief provides:

> DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT ERRONEOUSLY REFUSED DEFENDANT'S PRETRIAL REQUESTS TO OBTAIN THE ORIGINAL TAPES OF HIS ALLEGED STATEMENTS FOR AUTHENTICITY TESTING. DEFENDANT WAS FURTHER DENIED A FAIR TRIAL BY THE TRIAL COURT'S REFUSAL TO ALLOW THE JURY TO BE INFORMED THAT THE ORIGINAL TAPES WERE NOT ACCESSIBLE TO THE DEFENDANT, AND AGAIN, WHEN THE PROSECUTION, IN SUMMATION, WAS PERMITTED TO MISREPRESENT TO THE JURY THAT THE DEFENSE COULD HAVE HAD THE TAPES TESTED. (U.S. CONST. Amends. V and XIV; N.J. Const. (1947) Art. I, Par. 1)

(Respondents' Exhibit 25, p. 26.)

Moreover, the text of Point I cites numerous federal cases, such as Brady v. Maryland, 373 U.S. 83 (1963), Napue v. Illinois, 360 U.S. 264 (1959), United States v. Bagley, 473 U.S. 667, United States v. Agurs, 427 U.S. 97 (1976), and Kyles v. Whitley, 115 S. Ct. 1555 (1995). Because Petitioner's brief expressly referred to the United States Constitution and cited Supreme Court cases, Petitioner fairly presented the federal nature of the claim set forth in Ground One of the Petition to the New Jersey courts.

Similarly, Petitioner presented the federal nature of Ground Two by expressly referencing the United States Constitution in his point heading, which provides:

7

> THE INTRODUCTION OF THE 9-1-1 TAPE DURING THE
> GUILT AND PENALTY PHASE OF THE TRIAL DENIED MR.
> MORTON DUE PROCESS AND A FAIR TRIAL, VIOLATED
> THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION
> AND VIOLATED OUR STATE CONSTITUTION. U.S. Const.
> Amend. VI, VII and XIV. N.J. Const. (1947) Art. 1, para. 1, 10.

(Respondents' Exhibit 26, p. 163.)

Based on the foregoing, this Court rejects Respondents' argument that Petitioner's claims are unexhausted because he failed to alert the New Jersey courts to the federal nature of the claims. [2]

B. Habeas Standard of Review

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated Petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d). Specifically, § 2254(d) provides:

---

[2] Respondents also contend that the claims raised in Grounds One and Two "are barred due to petitioner's procedural default at the state level for failing to raise these claims in federal constitutional terms and depriving the state courts of the opportunity to address these claims in the first instance." (Answer, p. 41.) Under 28 U.S.C. § 2254(b)(1)(B)(i), exhaustion is **excused** when there is "an absence of available State corrective process." 28 U.S.C. § 2254(b)(1)(B)(i); see also Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam). Under this section and case law, a petition containing claims which are unexhausted but procedurally barred will not be dismissed without prejudice as unexhausted. "Although the unexhausted claims may not have been presented to the highest state court, exhaustion is not possible because the state court would find the claims procedurally defaulted." Toulson, 987 F.2d at 987; accord Coleman v. Thompson, 501 U.S. 722, 730-32 & n.1 (1991); Harris v. Reed, 489 U.S. 255 (1989). Because this Court finds that Petitioner fairly presented Grounds One and Two to the New Jersey courts, the procedural default doctrine is not implicated.

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its decision to deny habeas relief on that basis constituted an adjudication on the merits"). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247.

On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F. 3d at 678.

9

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to Petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Petitioner is in custody in violation of the Constitution or laws or treaties of the United States, see 28 U.S.C. § 2254(a), (d)(2).  A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412; see also Carey v. Musladin, 127 S. Ct. 649, 653 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. For example, in Carey v. Musladin, the Court observed that, where "[n]o holding of this Court required the California Court of Appeal to apply the test of Williams and Flynn to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." Carey, 127 S. Ct. at 654.[3] In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4] Id. at 409-10; see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005).

C.  Ground One

In Ground One, Petitioner asserts that "DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE TRIAL COURT REFUSED HIS PRETRIAL REQUESTS FOR ACCESS TO THE ORIGINAL TAPES OF HIS ALLEGED STATEMENTS FOR TESTING AND REFUSED TO INSTRUCT THE JURY OF THIS LACK OF ACCESS, BUT PERMITTED THE PROSECUTOR TO ARGUE IN SUMMATION THAT THE DEFENSE COULD HAVE HAD THE TAPES TESTED."  (Pet. ¶ 12.A.)

---

[3] See also Wright v. Van Patten, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented . . . , it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[4] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent." Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

The New Jersey Supreme Court rejected Petitioner's Brady v. Maryland, 373 U.S. 83 (1963), claim on the ground that the original tapes were not exculpatory or otherwise favorable to petitioner:

> Defendant argues that, by refusing to turn over the original tapes, the prosecution violated Brady. Brady's focus, however, is on the nondisclosure of exculpatory evidence, not on challenges to the evidence's authenticity. See Brady, supra, 373 U.S. at 87 . . . (finding constitutional violation in prosecutor's failure to notify defendant of existence of co-defendant's inculpatory statement); see also Kyles v. Whitley, 514 U.S. 419, 437-38 . . . (1995) (finding Brady violation when prosecutor failed to inform defendant of existence of exculpatory evidence).
>
> The prosecution met its burden of disclosure by providing defendant with copies and transcripts of the taped confessions. Moreover, neither of these confessions were exculpatory . . . . Defendant's argument, that the original tapes, if altered, would constitute exculpatory evidence under Brady, is too attenuated. His challenge is directed at the authenticity, not the disclosure of evidence. As such, defendant must provide more than mere unfounded allegations of tampering to compel the prosecutor to turn over the original tapes for testing.

Morton, 155 N.J. at 413-14.

The Supreme Court has held that the prosecution in a criminal proceeding has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant, either because the evidence is exculpatory or because it can serve to impeach a key prosecution witness. See Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1967). Supreme Court precedent clarifies that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985); see also California v. Trombetta, 467 U.S. 479, 488-89 (1984) (state's failure to retain breath samples was not unconstitutional where the chances are extremely low that preserved samples would have been exculpatory).

In this case, the record reflects that the Law Division conducted an evidentiary hearing on Petitioner's motion for production of the original tapes containing his two statements to the police, heard Petitioner's testimony, and concluded that there was no credible evidence of tampering. See Morton, 155 N.J. at 414, 416. The New Jersey Supreme Court expressly agreed with the trial court's factual determination that there was no support of Petitioner's allegation that the original tape recording of his first statement was tampered with:

> On the record before us, nothing supports [Petitioner's] allegation of tampering . . . . Accordingly, we agree with the trial court's ruling that defendant did not provide a sufficient factual basis to justify access to the original tapes. If, however, defendant can make a sufficient showing, he may renew his request in a petition for post-conviction relief.

Morton, 155 N.J. at 416.

The New Jersey Supreme Court reasoned that, because no evidence supported Petitioner's allegation of tampering of the original tape recording, the original tape was not exculpatory under the first component of a Brady claim. See Morton, 155 N.J. at 413-14. ("Defendant's argument that the original tapes, if altered, would constitute exculpatory evidence

13

under Brady, is too attenuated . . . . defendant must provide more than mere unfounded allegations of tampering to compel the prosecutor to turn over the original tapes for testing"). And under the AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).[5] Under § 2254(e)(1), this Court must presume the New Jersey court's factual finding to be sound. Petitioner has not rebutted this presumption of correctness by clear and convincing evidence, and he has not established that the decision of the New Jersey courts was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See Matthews v. Ishee, 486 F. 3d 883, 895-96 (6th Cir. 2007) (state court's factual finding, in rejecting prosecutorial misconduct claim, that no preexisting plea deal existed in exchange for prosecution witness's testimony, was not rebutted by clear and convincing evidence in habeas proceedings, so as to warrant grant of habeas relief on basis of a Brady violation for failure to disclose plea deal during trial); Moore-El v. Luebbers, 446 F. 3d 890, 900 (8th Cir. 2006) (state

---

[5] Specifically, § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

court's finding that there was no credible evidence that there was an agreement for leniency between prosecutor and prosecution witness was entitled to presumption of correctness, and petitioner's <u>Brady</u> claim based on states's failure to disclose purported agreement did not rebut presumption); <u>Wisehart v. Davis</u>, 408 F. 3d 321, 323-24 (7th Cir. 2005) (finding by state supreme court that there was no agreement between prosecution and its key witness to testify against petitioner was binding upon federal habeas court addressing petitioner's <u>Brady</u> claim, based upon government's alleged failure to disclose agreement); <u>Shabazz v. Artuz</u>, 336 F.3d 154 (2nd Cir. 2003) (habeas petitioner did not present evidence sufficient to rebut presumption of correctness afforded state court factual findings in rejecting <u>Brady</u> claim regarding undisclosed promises of leniency to prosecution witness). Accordingly, Petitioner is not entitled to habeas relief on the <u>Brady</u> claim raised in Ground One.

Petitioner also asserts in Ground One that the prosecutor's statement during summation that the defense had an opportunity to inspect the tape for evidence of tampering violated due process because this statement was untrue. The New Jersey Supreme Court rejected Petitioner's prosecutorial misconduct claim as follows:

> By arguing to the jury that the State should have tested the authenticity of the tapes, defense counsel contravened his representation to the court. Contrary to defendant's assertion, the redaction of the tapes, which the court ordered to eliminate information prejudicial to defendant, did not constitute tampering.
>
> The trial court acted within its discretion in offering the alternative of either issuing a curative instruction or allowing the prosecutor to address the issue in summation . . .
>
> The summation suggested that because defendant could have subpoenaed the tapes, he had access to them. In making that suggestion, however, the prosecutor failed to explain that

> defendant could have obtained the tape only by making an adequate factual showing. To this extent, the statement was both incomplete and inaccurate . . . . [W]e hold that the prosecutor's statement, when considered in the context of the entire trial, did not constitute reversible error . . . . When compared with cases in which closing statements have constituted reversible error, the prosecutor's statement in this case was not nearly so egregious.

Morton, 155 N.J. at 418-20.

The Supreme Court has held that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642. The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. See Darden, 477 U.S. at 182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001). As the Supreme Court explained in Darden,

> Under this standard of review, we agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial. The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent . . . . Much of the objectionable content was invited by or was responsive to the opening summation of the defense. As we explained in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the idea of "invited response" is used not to excuse improper comments, but to determine their effect on the trial as a whole. Id., at 13.

Darden, 477 U.S. at 181-182 (footnote omitted).

This Court concludes that the adjudication of Petitioner's prosecutorial misconduct claim by the New Jersey courts did not result in a decision that was contrary to or involved an unreasonable application of Supreme Court holdings.  See Fahy v. Horn, __ F. 3d U.S.C. __ 2008 WL 191643 *18-23 (3d Cir. Jan. 24, 2008).  Petitioner is therefore not entitled to habeas relief on the prosecutorial misconduct claim raised in Ground One.

D. Ground Two

In Ground Two, Petitioner asserts that "THE INTRODUCTION INTO EVIDENCE OF THE TAPE AND TRANSCRIPT OF THE VICTIM'S 9-1-1 CALL DENIED MR. MORTON DUE PROCESS AND A FAIR TRIAL."  (Pet. ¶ 12.b.)  As factual support, Petitioner states:

> The State was permitted over objection to introduce into evidence the tape and a transcript of the telephone call to police made by the victim as he lay dying on the floor in the office of the gas station. On the tape, the victim's strained voice is heard stating, "Delanco Amoco, Delanco Amoco."  Then three deep gasping breaths are audible followed by the clattering sound of the pay phone receiver as it was dropped and swung against the wall of the kiosk. Thereafter, there was no more communication between the caller and the police dispatcher.  Audible, however, was the soulful sound of music playing in the background and communications between the dispatcher and the fire desk and other emergency personnel who responded to the call.

(Pet. ¶ 12.b., Factual Support.)

The New Jersey Supreme Court rejected the above claim as follows:

> We also reject defendant's argument that the admission of the tape of Eck's 9-1-1 phone call at the guilt and penalty phase was prejudicial.  In the guilt phase, the tape provided an auditory reconstruction of the crime scene that corroborated other testimony.  See State v. King, 215 N.J. Super. 504, 517-18 . . . (1987).  It also supported the testimony of Benjamin Outlaw, whose car horn can be heard in the background of the tape.  Outlaw testified at trial that he witnessed defendant's car speed from the

17

> Amoco station just before Outlaw entered.  He testified further that, because no attendant came to assist him at the pump after he arrived at the station, he honked his horn . . . .  In light of the probative nature of the 9-1-1 tape at both the guilt and penalty phase, we find that the trial court acted within its discretion in admitting the tape into evidence.

Morton, 155 N.J. at 454-55.

In Estelle v. McGuire, 502 U.S. 62 (1991), the Supreme Court held that the state court's admission in petitioner's trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) did not violate due process because the evidence was relevant to intent.  "The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point. Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial.  We hold that McGuire's due process rights were not violated by the admission of the evidence."  Id. at p. 70.

To be sure, the United States Court of Appeals for the Third Circuit has held that the admission of evidence may violate due process where the evidence "undermine[d] the fundamental fairness of the entire trial."  Keller v. Larkins, 251 F. 3d 408, 413 (3d Cir. 2001); see also Lesko v. Owens, 881 F. 2d 44, 51 (3d Cir. 1989) ("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional

18

violation"); Bisaccia v. Attorney General, 623 F. 2d 307, 313 (3d Cir. 1980) (when "the probative value of . . . evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law"). However, this Court is not aware of any Supreme Court case clearly establishing that the admission of relevant but prejudicial evidence constitutes a violation of federal constitutional rights, and relevant Supreme Court case law suggests the contrary. See, e.g., Estelle, 502 U.S. at 70 (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction). Because the admission of the 9-1-1 tape was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Two. See Minett v. Hendricks, 135 Fed. Appx. 547 (3d Cir. 2005) (rejecting claim that admission of "other crimes" evidence is contrary to or an unreasonable application of clearly established Supreme Court precedent).

E.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## III.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and denies a certificate of appealability under 28 U.S.C. § 2253(c).

s/Robert B. Kugler
**ROBERT B. KUGLER, U.S.D.J.**

DATED:    February 20,    2008